UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JAMES DAMON, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | 1:08-cr-00157-JAW-3 |
| ) | 1:11-cv-00058-JAW |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

James Damon is serving a 70-month sentence after his guilty-plea conviction for being a felon in possession of a firearm. Damon's sentence was affirmed on direct appeal. <u>United States v. Damon</u>, 595 F.3d 395 (1st Cir. 2010). In this 28 U.S.C. § 2255 proceeding Damon is arguing that because of intervening case law he is 'actually innocent' of his base offense level of 24[1] because his prior Massachusetts conviction for simple assault and battery should not now be counted as a crime of violence for purposes of 18 U.S.C. § 922(g)(1).[2] Currently represented by a federal defender, he seeks resentencing. The United States has filed an answer seeking summary dismissal. In the event there is a resentencing the United States forewarns that it will seek an upward variant sentence of 70-months.

**Discussion**

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the

---

[1] After his criminal history boosted his base offense level and his acceptance of responsibility brought it down, Damon's total offense level was 23 with a criminal history category of IV, and the applicable guideline range for imprisonment was 70 to 87 months.

[2] During sentencing Damon did not dispute that this conviction qualified as a violent felony under the applicable guidelines (Def.'s Sentencing Mem. at 6 n.1) although he did actively contest that his controlled substance conviction should be counted (<u>id.</u> at 6-9).

Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Damon's motion presents a discreet legal question about the potential application of the change in law to Damon's sentence. Paramount to Damon's attempt to get 28 U.S.C. § 2255 relief are Johnson v. United States, 559 U.S. __, 130 S. Ct. 1265 (2010) and the First Circuit's subsequent United States v. Holloway, 630 F.3d 252 (1st Cir. 2011).[3]

The United States Supreme Court's Johnson addressed a challenge to an Armed Career Criminal Act (ACCA), 18 U.S.C. § 924 (e)(2)(B), sentence and explained:

> We think it clear that in the context of a statutory definition of "*violent* felony," the phrase "physical force" means *violent* force-that is, force capable of causing physical pain or injury to another person. See Flores v. Ashcroft, 350 F.3d 666, 672 (C.A.7 2003) (Easterbrook, J.). Even by itself, the word "violent" in § 924(e)(2)(B) connotes a substantial degree of force. Webster's Second 2846 (defining "violent" as "[m]oving, acting, or characterized, by physical force, esp. by extreme and sudden or by unjust or improper force; furious; severe; vehement ..."); 19 Oxford English Dictionary 656 (2d ed.1989) ( "[c]haracterized by the exertion of great physical force or strength"); Black's 1706 ("[o]f, relating to, or characterized by strong physical force"). When the adjective "violent" is attached to the noun "felony," its connotation of strong physical force is even clearer. See id., at 1188 (defining "violent felony" as "[a] crime characterized by extreme physical force, such as murder, forcible rape, and assault and battery with a dangerous weapon"); see also United States v. Doe, 960 F.2d 221, 225 (C.A.1 1992) (Breyer, C.J.) ("[T]he term to be defined, 'violent felony,' ... calls to mind a tradition of crimes that involve the possibility of more closely related, active violence").

Johnson, 130 S.Ct. at 1271.

---

[3] The United States does not contest that Damon's Massachusetts conviction at issue here falls under the umbrella of Holloway's holding. (Gov't Mot. at 1.) Compare United States v. Dancy, 640 F.3d 455 (1st Cir. 2011).

In Holloway the First Circuit Court of Appeals addressed a challenge to an ACCA "violent felony" predicate offense vis-à-vis a Massachusetts conviction for a simple assault and battery. The Panel explained:

> The statute does not break the offense down into its various types nor does it provide charging language specific to those types. Consequently, a sentencing court may not rely on the generic "did assault and beat" charging language to identify which particular battery offense served as the offense of conviction. It is clear under state court construction of the statute that the statute encompasses a category of offenses which are no more than offensive touchings. We believe, applying Johnson, that the government has not established the offense of harmful battery as the statute has been construed. Another circuit has come to this same conclusion. United States v. Jones, 235 F.3d 342, 347 (7th Cir.2000) ("[N]o inference regarding whether [the defendant] committed a crime of violence can be drawn from the charging document's use of the phrase 'did assault and beat.' ")

Holloway, 630 F.3d at 260.[4]

*Pre-sentence Investigation Report*

The paragraph of the Revised Presentence Investigative report at the heart of this 28 U.S.C. § 2255 proceeding, Paragraph 30, reads as follows:

> 30. 12/08/05
> Age 20
> Assault and Battery,
> Massachusetts District
> Court, Brockton, Dkt. No. 0515CR008411
> 01/12/06: Guilty plea entered and accepted;
> Filed
> 4A1.1(c) 1
>
> The potential penalty of this offense was up to 2 ½ years imprisonment under State of Massachusetts law. Docket Sheets indicate that the defendant was represented by counsel and that the offense occurred on December 8, 2005, in Brockton, Massachusetts. Records indicate that the defendant assaulted [the victim] by grabbing her by the throat and pushing her against a wall.

---

[4] This Court addressed these two precedents in United States v. Bryant, No. 1:11-cr-00021-JAW, 2011 WL 1456149, 1 (D. Me. Apr. 13, 2011) vis-à-vis a motion to dismiss an indictment for a 18 U.S.C. § 922(g)(9) prosecution predicated on a Maine conviction for a misdemeanor crime of domestic violence. Shortly thereafter, the First Circuit confirmed in United States v. Booker, 644 F.3d 12, 17 -18 (1st Cir. 2011) that the two precedents are not applicable in § 922(g)(9) context.

3

(PIR ¶ 30.)

Attached to Damon's § 2255 motion is a copy of the December 12, 2005, complaint in Brockton, Massachusetts, Docket Number 0515 CR 008411. (Doc. No. 289-1.) The complaint listed as the name of the defendant James E. Damon, cited "265/13A/B," and read: "On DECEMBER 8, 2005, did assault and beat JOAN MARIE DAMON, in violation of G.L. c.265, §13A(a) (PENALTY: house of correction not more than 2 ½ years; not more than $1000)" (Id.)

The United States has attached a copy of the police investigative report to its answer. It is very much more descriptive of the type of physical force alleged by the victim. Upon his arrival at the residence the officer,

> spoke with the victim … who stated she got into a verbal argument with suspect James E. DAMON…. The victim stated the argument escalated and the suspect became physically violent. She stated [Damon] grabbed her by the throat and pushed her up against a wall. The victim continued to say the suspect continually pushed her and screamed at her stating that he was "untouchable". The argument [eventually] ended and the suspect left. At that point the victim called the police.
> ….
> During this officer[']s interview of the victim I observed the victim[']s neck to be red and discolored.

(Doc. No. 328 at 3)(redacted version). However, as the discussion below makes clear this is not the type of evidence that the Court can consider in making the violent felony determination, although there was considerable discussion concerning consideration of this type of extra evidence when arriving at the ultimate sentence once the guideline calculation has been made.

*Sentencing Guidelines*

United States Sentencing Guideline § 2K2.1(a)(2) sets forth a 24 base offense level, "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. §

4

2K2.1(a)(2). The application note provides: "'Crime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." As relevant to Damon's case § 4B1.2(a), the ACCA guideline, provides: "The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—[] has as an element the use, attempted use, or threatened use of physical force against the person of another." § 4B1.2 (a)(1).

*Pre-Sentence Supreme Court Relevant Precedents*

There are a cluster of cases from the United States Supreme Court predating Damon's sentencing and the violent felony determination that set the stage for the following discussion.[5] Key among these for present purposes are Shepard v. United States, 544 U.S. 13 (2005) and Taylor v. United States, 495 U.S. 575 (1990).

In Shepard, weaving in Taylor, the Court held:

> In Taylor v. United States, 495 U.S. 575 (1990), we held that a court sentencing under the ACCA could look to statutory elements, charging documents, and jury instructions to determine whether an earlier conviction after trial was for generic burglary. <u>The question here is whether a sentencing court can look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary. We hold that it may not</u>, and that a later court determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.

Shepard, 544 U.S. 13, 16 (2005) (emphasis added). The Court carefully explored these precedents in ruling on Damon's sentencing challenge to using his controlled substance conviction as a predicate offense. For instance, it observed:

---

[5] I have not felt it necessary to go into a full-fledged discussion of either Teague v. Lane, 489 U.S. 288 (1989) or Bousley v. United States, 523 U.S. 614, 620 (1998), the foundations of the retroactivity inquiry. The Court and the parties are well apprised of these bedrocks and the (unresolved) question to be resolved is adequately fleshed out in the Circuit cases discussed below.

5

> So there had to be a way to treat similar people similarly throughout the country, to do so in a categorical way, and to avoid retrying things that have already been determined. And for that purpose, I think the court was wise to look at charging documents, at the J and C, at plea colloquy, at plea agreements, things that are not in dispute and that are more or less official documents under the law. So I really -- at first, I thought Shepard was odd, an outlier, but the more I thought about it, the wiser I think it is.

(Sentencing Tr. at 16.)

With regards to identifying counts as a "violent felony", it is not necessary for this Court to inquire into whether or not Damon's assault conviction counts as a 'violent felony' in view of Holloway. Compare Chambers v. United States, 555 U.S. 122, 126 (2009) (cert review after direct appeal) (concluding that failure to report under a multi-dimensional Massachusetts statute does not qualify as a ACCA predicate); Begay v. United States, 553 U.S. 137, 139 (2008) ("The question in this case is whether driving under the influence of alcohol is a "violent felony" as the Act defines it. We conclude that it is not.").[6] However, Chambers and Begay do feature in discussions about the retroactivity of such determinations to cases on collateral review.

*Current Inter-Circuit Disagreement*

In Davis v. United States, the Supreme Court observed, "absent the particular considerations regarded as dispositive in that case, the fact that a contention is grounded not in the Constitution, but in the 'laws of the United States' would not preclude its assertion in a [§] 2255 proceeding." 417 U.S. 333, 346 (1974).[7] Davis stressed that § 2255 relief must issue if the

---

[6] See also Sykes v. United States, __ U.S. __,__, 131 S.Ct. 2267, 2272 (2011) ("So while there may be little doubt that the circumstances of the flight in Sykes' own case were violent, the question is whether § 35–44–3–3 of the Indiana Code, as a categorical matter, is a violent felony.") (residual clause).

[7] Davis was not addressing a sentencing law:
> In this case, the petitioner's contention is that the decision in Gutknecht v. United States, as interpreted and applied by the Court of Appeals for the Ninth Circuit in the Fox case after his conviction was affirmed, establishes that his induction order was invalid under the Selective Service Act and that he could not be lawfully convicted for failure to comply with that order. If this contention is well taken, then Davis' conviction and punishment are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance 'inherently

circumstance of the case "'inherently results in a complete miscarriage of justice' and 'present(s) exceptional circumstances' that justify collateral relief under [§] 2255." Id. This is the standard relied on by the Circuit opinions summarized below.[8]

There are a handful of Circuit-level cases that address the applicability of the Begay/Chambers/Johnson/Holloway line of precedents to post-sentencing cases.[9] The Seventh Circuit's Narvaez v. United States, 641 F.3d 877 (7th Cir. 2011) addressed a career offender sentence in the context of a 28 U.S.C. § 2255 proceeding and remanded for resentencing without the career offender enhancement. Id. at 878. With regards to the posture of this sentencing challenge the Panel reasoned:

> We have recognized that sentencing errors are generally not cognizable on collateral review. See Scott v. United States, 997 F.2d 340, 342–43 (7th Cir.1993). Mr. Narvaez's case, however, does not come within this general rule. It presents a special and very narrow exception: A post-conviction change in the law has rendered the sentencing court's decision unlawful. See Welch [v. United

---

results in a complete miscarriage of justice' and 'present(s) exceptional circumstances' that justify collateral relief under [§] 2255. Therefore, although we express no view on the merits of the petitioner's claim, we hold that the issue he raises is cognizable in a [§] 2255 proceeding.
Id. at 346-47. Id. at 343. ("Although this microscopic analysis of [§] 2255 surely shows that the statutory language is somewhat lacking in precision, the resulting shadow that the dissenting opinion would cast over the statute totally disappears in the light of its legislative history. …That history makes clear that [§] 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.").

[8] In United States v. Addonizio the United States Supreme Court gave the following summary of the scope of 28 U.S.C. § 2255 relief:
> While the remedy is in this sense comprehensive, it does not encompass all claimed errors in conviction and sentencing. Habeas corpus has long been available to attack convictions and sentences entered by a court without jurisdiction. See, e. g., Ex parte Watkins, 3 Pet. 193, 202-203, 7 L.Ed. 650 (Marshall, C. J.). In later years, the availability of the writ was expanded to encompass claims of constitutional error as well. See Waley v. Johnston, 316 U.S. 101, 104-105; Brown v. Allen, 344 U.S. 443. But unless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained far more limited. Stone v. Powell, 428 U.S. 465, 477 n. 10. The Court has held that an error of law does not provide a basis for collateral attack unless the claimed error constituted "a fundamental defect which inherently results in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428.

442 U.S. 178, 185 (1979).

[9] These cases have complicated procedural histories including reversals, rehearings en banc, and dissents. If given a full reading it becomes clear that this is a challenging determination very much open to reasonable dispute among the federal District and Circuit Courts. The United States has cited a string of District Court cases from Florida that touch upon the issue, but, as Damon points out, they are for the most part decided on alternative grounds.

7

> States], 604 F.3d [408,] 412–13 [(7th Cir. 2010)] (recognizing that relief is available "where a change in law reduces the defendant's statutory maximum sentence below the imposed sentence"). In Begay and Chambers, the Supreme Court resolved an open question regarding the kinds of crimes that fall within the meaning of "violent felony" under the ACCA, and, by implication, the career offender guideline. See [United States v.] Templeton, 543 F.3d [378] 380 [(7th Cir. 2008)]. The Court's pronouncements did not simply constitute an "intervening change in the law" in the traditional sense. Rather, the decisions make clear that, at the time of his sentencing, Mr. Narvaez did not qualify as a career offender under the guidelines. An additional five years of incarceration was imposed upon him without *any* legal justification. Such gratuitous infliction of punishment is a fundamental defect in the court's judgment that clearly constitutes a complete miscarriage of justice and a violation of due process.

Id. at 881-82 (footnote omitted). With regards to the potential that the defendant could still be sentenced to the same term on remand, the Panel declared: "Speculation that the district court today might impose the same sentence is not enough to overcome the fact that, at the time of his initial sentencing, Mr. Narvaez was sentenced based upon the equivalent of a nonexistent offense." Id. at 183.

The Eighth Circuit addressed the question of the applicability of these new precedents to a 28 U.S.C. § 2255 movant in Sun Bear III v. United States, 644 F.3d 700 (8th Cir. 2011) (rehearing en banc). On rehearing en banc the Circuit reversed the Panel's decision and diverged from Narvaez on the question of whether you could bring a guidelines challenge for the first time in a habeas proceeding, answering no. Id. at 705. The majority reasoned in part:

> In this case, the panel concluded that the miscarriage-of-justice exception applies because Sun Bear's claim "is based on a post-conviction change in the law that renders unlawful the district court's sentencing determination." Sun Bear II [v. United States], 611 F.3d [925,] 930 [(8th Cir. 2010)], citing Davis, 417 U.S. at 346–47. We disagree. Sun Bear's 360–month sentence is not unlawful. An unlawful or illegal sentence is one imposed without, or in excess of, statutory authority. United States v. Foster, 514 F.3d 821, 824 (8th Cir.2008); United States v. Stobaugh, 420 F.3d 796, 804 (8th Cir.2005) ("a sentence is not illegal ... unless it exceeds the statutory maximum for the offense of conviction"), cert. denied, 546 U.S. 1120 (2006). Sun Bear's sentence is well-within the statutory maximum authorized for the offense of second-degree murder, see 18 U.S.C. § 1111(b), and

> in addition within the initial guidelines range of 292–365 months. Unlike cases such as Welch and [United States v.]Shipp, [589 F.3d 1084 (10th Cir. 2009)] where applying the ACCA increased the defendant's statutory maximum sentence, the same 360–month sentence could be reimposed were Sun Bear granted the § 2255 relief he requests. Thus, no miscarriage of justice is at issue.

Id. at 705.

For its part, the Eleventh Circuit addressed among other theories a claim by a 28 U.S.C. § 2255 movant that he was actually innocent of being a career offender. Gilbert v. United States, 640 F.3d 1293, 1320 (11th Cir. 2011). On rehearing en banc the Panel summarized:

> Unable to colorably contend that he was convicted of a nonexistent crime, Gilbert asserts instead that he "is actually innocent of being a career offender, factually and legally." Put in its best light, Gilbert's argument assumes that he was convicted of the nonexistent offense of being a career offender with only one qualifying predicate offense. But he wasn't. As the indictment and the judgment in this case show, Gilbert was not charged with, nor was he convicted of, being a career offender. A defendant who is convicted and then has the § 4B1.1 career offender enhancement, or any other guidelines enhancement, applied in the calculation of his sentence has not been convicted of being guilty of the enhancement. If guidelines enhancements were crimes, they would have to be charged in the indictment and proven to the jury beyond a reasonable doubt. See United States v. Kenney, 391 Fed.Appx. 169, 172 n. 2 (3d Cir.2010) (unpublished) ("The career offender enhancement is not a separate offense, however. If it were, its elements would need to be proven to a jury beyond a reasonable doubt."). Gilbert's position turns on treating sentences as convictions, and an argument that depends on calling a duck a donkey is not much of an argument.

Id. at 1320. "In other words," the Panel summed up after a lengthy discussion, "the actual innocence of sentence exception to the bar against second or successive motions involving sentence claims, as narrow as it was, did not survive AEDPA." Id. at 1322. But it expressly noted: "We do not decide whether a claim that the sentencing guidelines were misapplied may be brought in a first time § 2255 motion." Id. at 1323. The case simply does not answer the question posed by this petition.

9

In an unpublished decision the Third Circuit denied a certificate of appealability to a 28 U.S.C. § 2255 movant challenging a career offender determination in the wake of Begay. United States v. Manigault, 395 Fed.Appx. 831, 834, 2010 WL 3794607 (3d Cir. 2010)(unpublished). The Panel assumed *arguendo* that Begay applied retroactively but determined that the claim did not raise a constitutional issue. Id. at 834 n.1. Rather than a first-time § 2255 it had before it the question of "whether the claim alleged a violation of a constitutional right under [28 U.S.C.] § 2253(c)(2), a distinct issue." Id. at 834 n.3.

### *The United States' Waiver Argument*

The United States argues in part that Damon has waived his Johnson/ Holloway attack because he did not challenge this particular aspect of his sentencing determination at sentencing or during his direct appeal. In his reply brief Damon summarizes the posture and substance of his 28 U.S.C. § 2255 claim:

> Here, Mr. Damon has asserted that he is actually innocent of having committed a crime of violence. He contested the underlying facts of his prior conviction at his original sentencing hearing and has asserted that the facts provided by the Government that could be considered by a District Court would be insufficient to support a finding that he committed a crime of violence. Having originally disputed the nature of the facts underlying his conviction places him in a narrow category of defendants, as those who admitted to sufficient facts establishing the basis of the prior conviction would not be able to claim to be "actually innocent."

(Reply Mem.at 7.)[10]

---

[10] Damon's argument for disputing the facts of this conviction is skeletal. The interchanged was as follows:

THE COURT: Okay. Let's turn to the adult convictions. I think one of them involved or one -- yes, the December 8, 2005 assault involved his mother.
MS. VILLA: It did.
THE COURT: And does he dispute the description?
MS. VILLA: Yes, he does.
THE COURT: All right. I take it he doesn't dispute that he was convicted of assault and battery?
MS. VILLA: No, he does not.

The First Circuit addressed such a waiver argument limited to the time between trial and direct appeal in United States v. Dancy:

> Given that before our opinion in Holloway Dancy could understandably have assumed that our precedents holding that Massachusetts ABPO and ABDW convictions *are* ACCA predicates were not subject to question, see United States v. Am, 564 F.3d 25 (1st Cir.2009) (ABDW); United States v. Fernandez, 121 F.3d 777 (1st Cir.1997) (ABPO), he has not waived (that is, knowingly given up) his arguments. He has, however, forfeited them by not raising them before the district court when he could have, and so we review the district court's decision for plain error. See Johnson v. United States, 520 U.S. 461, 467–68 (1997) (plain error standard applies where settled law changes between trial and appeal and issue was not raised in district court); United States v. Barone, 114 F.3d 1284, 1294 (1st Cir.1997) (same).

640 F.3d 455, 465 (1st Cir. 2011), cert. denied, 2011 WL 4708012, 1 (Nov.7, 2011); see also United States v. Torres-Rosario, 658 F.3d 110, 116 (1st Cir. 2011) (on direct appeal) ("Here, without reservation, Torres-Rosario conceded that he fell within the armed career criminal statute. But courts may excuse waivers and disregard stipulations where justice so requires. We think that is the appropriate course in this instance. Failure to allow the challenge based on Holloway would likely mean a much longer and arguably unjustified prior term for Torres-Rosario; and, as we explain, there is no reason to think that the government would be unfairly prejudiced by reopening the issue.") (footnote omitted). But see Lindsey v. United States, 615 F.3d 998, 1000- 1001 (8th Cir. 2010) (although foreclosed by Circuit law, no excuse for procedural default of Begay argument).[11]

---

(Sentencing Tr. at 16.) He does concede that the challenge is procedurally defaulted. (Id. at 4.)

[11] The Lindsey Panel did conclude that Begay applied retroactively to cases on collateral review but it relied on Sun Bear (II) v. United States, 611 F.3d 925 (8th Cir. 2010) which was vacated by the en banc decision. 644 F.3d 700 (8th Cir. 2011). In this case Damon concedes the procedural default, but argues he is "actually innocent" of the sentencing enhancement, an issue not addressed by these cases. (Doc. No. 331, Pet.'s Reply at 4).

11

*In Sum*

Beyond summarizing the present Circuit opinions applicable to Damon's claims there is not much more to offer by way of recommending to the sentencing court the appropriate way forward in this 28 U.S.C. § 2255 proceeding. The parties have done a very able job in briefing the issue. Count 5 of the indictment charged Damon with being a felon in possession in violation of 18 U.S.C. 922(g)(1) and set forth the Massachusetts conviction for simple assault as the predicate offense. After the fact, it has already been established that his controlled substance conviction was a valid predicate offense. So Damon's argument boils down, not to an assertion that he is actually innocent of the 18 U.S.C. § 922(g)(1) offense, but that he is actually innocent of his base offense level of 24 which is set by the sentencing guideline and not the statutory provision under which he was charged. My tentative recommendation to the court in these circumstances is that Johnson and Holloway could theoretically be applied retroactively to a non-time barred, first-time § 2255 petition and that even a procedurally defaulted defendant can, in the right circumstances, mount a challenge of "actual innocence" to a sentencing enhancement in the context of a § 2255 petition. Nevertheless, in the final analysis my conclusion is that Damon has not made the necessary showing that the sentencing error in this case is either statutorily illegal or of constitutional dimension.

Damon's plea agreement acknowledged that he faced a maximum sentence of ten years. (Plea Agreement at 1; Doc. No. 67.) Damon's guideline range with the base offense of 24 was 70 to 87 months. (Sentencing Tr. at 37.) This compares with 37 to 46 months for a base offense level of 20. (Sentencing Tr. at 32, Def. Sentencing Mem. at Doc. No. 171.) The Court settled on the 70-month sentence despite the United States' recommendation for a sentence on the high end

of the range and the Court's articulation of its concern that Damon was marching down a path leading to a life in prison. (Id. at 51-53.)

The § 2255 movant in the Seventh Circuit's Narvaez was pressing a claim that he no longer qualified as a career offender under the change in law and that therefore he was "actually innocent" of a then-mandatory sentencing enhancement under the guidelines. The Court legitimately expressed a difficulty in distinguishing that circumstance from a case where the subsequent change in the law made the defendant innocent of a statutorily defined offense. Damon cannot now dispute that he qualifies as a felon in possession and that he knew his potential sentence could have been up to 10 years. His challenge is to a guideline felon in possession sentence based on his second "violent felony" offense that would have been decided differently after Holloway.[12] It is thus not a mandatory sentencing enhancement that he is challenging, but rather a two-year difference between the high-end of the base-offense level 20 and the low-end of base-offense level 24. Whether or not this constitutes a "miscarriage of justice" can be analyzed with a view to the court's discretion to re-impose the same sentence at resentencing if it accepts the United States' argument for an upward variance,[13] even after consideration of the advisory guidelines. To a defendant serving a sentence of imprisonment, it would appear that an additional two years of incarceration most certainly amounts to a "miscarriage of justice," but the sentencing court might lawfully impose that additional two years under the current sentencing regime.

---

[12] The First Circuit stated recently in the context of a direct appeal that "treating a Massachusetts assault and battery conviction as an ACCA predicate, without further evidence of violence, is now plain error under Holloway, although (as we noted) the district judge was merely following then-existing circuit precedent." Torres-Rosario, 658 F.3d at 116.

[13] The Presentence Investigative Report found no grounds for a variant sentence. (PIR at 22.)

Discretion in the imposition of sentence brings with it uncertainty. The underlying facts concerning the Massachusetts assault (and defendant's disagreement with the facts as reported in the presentence report) have not changed. My conclusion is that given the current state of the law, a reasonable jurist could conclude that Damon's procedural default of the Holloway issue could be excused in these circumstances and his "actual innocence" regarding the sentence enhancement could form the basis of a resentencing order. On the other hand, there is no direct circuit authority that I could find which has taken that position. In the final analysis, and without the benefit of being in the position of the sentencing judge, my conclusion is that Damon's case does not present the factual matrix that would warrant this Court's entry of such an order. It is now apparent that the guideline computation at Level 24 was plain error and that Damon is "actually innocent" of that guideline enhancement. What is not at all clear to me is whether Damon was sentenced on the basis of assumptions concerning his criminal history which were materially untrue in the sense of Townsend v. Burke, 334 U.S. 736 (1948) so that the resulting sentence is a "miscarriage of justice" inconsistent with due process of law. In the final analysis that question is best answered by the sentencing judge.

## CONCLUSION

As set forth above, I recommend that the Court grant the United States' motion for summary dismissal of this 28 U.S.C. § 2255 motion, unless this Court concludes that a "miscarriage of justice" has occurred. I further make no recommendation regarding a certificate of appealability as contemplated by 28 U.S.C. § 2253(c)(2) although I question whether the First Circuit would view the matter as a proper one for the issuance of a certificate of appealability

based upon the reasoning of the Third Circuit unpublished decision.[14] Damon has not made a substantial showing of the denial of a constitutional right on these facts.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

November 21, 2011.

---

[14] See Manigault, 395 Fed.Appx.at 834.